UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| TONNA WILSON, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5:08-377-JMH |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) **MEMORANDUM OPINION AND ORDER** |
| SECURITY | ) |
| | ) |
| Defendant. | ) |
| | ) |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Supplemental Security Income and Disability Insurance Benefits [Record Nos. 6, 7].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed for disability benefits in April 2006, alleging an onset of disability of March 15, 2004, due to chronic neck pain resulting from degenerative disc disease of the cervical spine and anxiety disorder. [AR at 91.] Her claim was denied initially and on reconsideration, and she requested a hearing,

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

which was held on October 23, 2007 [AR at 31, 73, 78, 81]. Her application was subsequently denied by Administrative Law Judge ("ALJ") Don C. Paris in a decision dated February 28, 2008. [AR at 10-19.] The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner [AR at 1, 5.] This matter is ripe for review and properly before this Court under § 205(c) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff was fifty-years-old at the time of the final decision by the ALJ. [*See* AR at 36.] She has a tenth grade education and past relevant work experience as a produce packer and returns clerk. [AR at 38-41.] Plaintiff has not worked since the date of the alleged onset of her disability.

The Administrative Record contains a variety of medical records from various sources for Plaintiff, however her arguments presented to this Court today focus in large part on those of Dr. John W. Gilbert, her treating neurosurgeon. Dr. Gilbert consulted with Plaintiff in order to consider whether surgery would be appropriate for her, apparently as part of an effort to resolve her complaints of headaches and neck and back pain. In his notes from the initial surgical consult, dated January 17, 2007, Dr. Gilbert noted Plaintiff's complaints of neck and back pain, muscle spasms, headache, facial pain, and low back pain with the knot in the muscles. [AR at 492.] Upon a physical examination, he noted that

cranial nerves, sensation, and deep tendon reflexes in her upper and lower extremities were intact. [*Id.*] Further, he found no tenderness upon inspection and palpation of the head and neck, that the range of motion in her neck was normal, her neck muscle strength and tone showed negative spasm, and her spine and thoracolumbar muscle strength and tone were negative for spasm. [*Id.*] His examination of her lower extremities showed negative straight leg raising tests on both sides, and examination of the right and left upper extremities showed a negative Spurling's test. [*Id.*] He found her reflexes to be grossly normal, cranial sensation grossly intact, and her mood and affect grossly normal. His diagnosis for Plaintiff was cervical DDD, HNP, stenosis, Lumbar DDD, Lumbar HNP, Lumbago, Lumbosacral pain, radiculopathy, cervicalgia, pain in the lower legs, numbness, tingling, muscle spasms.[2] [*Id.*]

---

[2]This is in keeping with earlier testing.  A February 16, 2004, MRI of the cervical spine without contrast, showed normal alignment of the cervical spine and vertebral bodies having normal signal.  [AR at 192.]  As well, the interpreting radiologist, Christine Kennedy, M.D., noted an impression of degenerative changes in the mid cervical spine at the C4-5, C5-6, and C6-7 levels.  [*Id.*]  During a consultation with Dr. Set Shahbabian on April 13, 2004, she complained of neck pain, pain across her shoulder, and left arm pain, numbness in the left thigh, a burning sensation in the lateral femoral cutaneous nerve distribution on the left side.  [AR at 193.]  Physical therapy was recommended prior to further testing.  [*Id.*]

   An MRI scan of the cervical spine, completed May 17, 2004, confirmed the diagnoses of mild degenerative disc disease at C5-6, C6-7, and C7-T1, as well as mild posterior disc protrusion at T1-2. [AR at 196.]  On January 24, 2005, at the St. Elizabeth Medical Center, a cervical spine series identified degenerative bony

On February 7, 2007, Dr. Gilbert again diagnosed cervical degenerative disc disease, stenosis, lumbar HNP without myelopathy, lumbar degenerative disc disease, lumbosacral pain, muscle spasms, tension headaches, vascular headaches, and he noted that Plaintiff's function and activities of daily living were stable and being improved. [AR at 495.] He recommended at that time that she follow-up with a neurologist concerning white matter signal abnormality on her MRI of her brain.[3] [*Id.*] He also ordered a Pain Patient Psychological Assessment and Profile, from which he concluded that Plaintiff suffered from anxiety and somatization. [*Id.*] Through the course of treatment, which did not result in surgery according to the Administrative Record, he prescribed Lidoderm patches and Tramadol. [AR at 483-522.]

With regard to this case, then-pending before the ALJ, Dr. Gilbert reported on a Physical Capacities Evaluation Form that Plaintiff was able to sit, stand, and walk for 1 hour in an eight-hour work day, occasionally lift up to 20 pounds, never lift

---

discogenic spurring at C5-6 and C6-7 and bilateral foraminal narrowing, most pronounced at the C6-7 level. [AR at 234.]

[3] An MRI conducted on January 17, 2007, found a "small focus of abnormal signal in the periventricular white matter adjacent to the right frontal horn and a very small focus subcortical white matter right parietal. These are nonspecific findings, maybe seen with chronic white matter changes, however early findings of a demylenating process cannot be excluded. Remaining study within normal limits." [AR at 499.] Dr. Patrick K. Leung, a neurologist, assessed the findings as "likely a reflection of her hypertension with secondary small vessel disease." [AR at 484.]

4

weights greater than 20 pounds, use her right hand for simple grasping and fine manipulation but never for pushing and pulling, never use her left foot for repetitive movement as in operating foot controls due to surgery, bend and squat occasionally, never crawl, climb, or reach above shoulder level, and was totally restricted from activities involving unprotected heights and being around moving machinery. [AR at 522.] He concluded, however, that she had no restriction from activities involving exposure to marked changes in temperature and humidity, driving automotive equipment, or exposure to dust, fumes, and gases. [*Id.*]

The ALJ made the following findings in determining that Plaintiff was not entitled to disability benefits:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since March 15, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq*.).

3. The claimant has the following impairments: chronic neck pain due to degenerative disc disease of the cervical spine; anxiety-related disorder; and, somatoform pain disorder (20 CFR § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform a range of medium work activity. The claimant can lift and carry 50

5

>pounds occasionally and 25 pounds frequently. She can sit, stand and/or walk, about six hours each, in an eight-hour workday, with normal rest and meal breaks about every two hours. She can frequently (but not continuously) push/pull with the upper extremities. She cannot perform any repetitive, uninterrupted work above head level or any repetitive reaching overhead. She cannot perform any repetitive, uninterrupted extension or flexion of the head from side to side. The claimant has a "severe" panic disorder and pain disorder, but she retains the mental capacity to understand, remember and carry out simple work instructions and she can maintain concentration and attention for two-hour segments over an eight-hour workday day [*sic*], five days per week. She can relate adequately with co-workers and supervisors in an object-focused work environment and she can adapt to the changes and pressures of a routine work environment.

6. The claimant is capable of performing her past relevant work as a produce packer and returns clerk. The work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. A finding of not disabled is likewise reached within the framework of Medical Vocational Rule 203.26, Social Security Ruling 85-15 and the vocational expert witness testimony.

8. The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2004, through the date of this decision (20 CFR 404.1520(f)).

[*Id.* at 12-19.]

In considering Dr. Gilbert's assessment of Plaintiff's physical abilities, the ALJ wrote that:

>Based on her subjective complaints, Dr. Gilbert opined the claimant can occasionally lift 20 pounds, sit for one hour, stand for one hour and walk for one hour. Because Dr. Gilbert's assessment is based on subjective

>    complaints, versus any significant findings on
>    MRI or a physical examination, it cannot be
>    credited (Social Security Ruling 96-2p).

[AR at 16.]

## II.  OVERVIEW OF THE PROCESS

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

1.  An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

2.  An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3.  If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4.  If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work.  If the claimant is able to continue to do this previous work, then he is not disabled.

5.  If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work.  If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health and Human Servs*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 CFR § 404.1520 (1982)).  "The burden of proof

is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

### III. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion, *see Landsaw v. Sec'y of Health and Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

### IV. ANALYSIS

Plaintiff argues that, in reaching the determination that she was not disabled, the ALJ failed to give appropriate weight to the evaluation of her treating physician, Dr. Gilbert, who opined that Plaintiff was severely limited as to carrying, bending, squatting,

8

crawling, climbing, and reaching, among other limitations. Plaintiff also takes the position that the ALJ failed to consider the combined effect of all of the exertional and non-exertional impairments from which she suffers in determining her residual functional capacity to work. For the reasons which follow, Plaintiff's arguments are not well taken by the Court.

**A. Opinion of Treating Physician**

In considering a disability claim, not all doctor's opinions are considered equally. An ALJ should afford different weights to the opinions of physicians, examining and consulting, during his or her review of a claim:

> When evaluating medical opinions, the SSA will generally "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" her. [20 C.F.R.] § 404.1527(d)(1). The SSA will give the most weight "to opinions from [the claimant's] treating sources, since these sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)...." *Id.* § 404.1527(d)(2). The SSA promises claimants that it "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Id.*

*Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007); *accord Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-46 (6th Cir. 2004). Such an opinion deserves great weight "only if [it is]. . . supported by sufficient clinical findings and . . . consistent with the evidence." *Bogle*, 998 F.2d at 347-48; 20

9

C.F.R. § 416.927(d). In this instance, the ALJ found that Dr. Gilbert failed to provide objective medical evidence to support his opinion concerning Plaintiff's limitations. [AR at 16-17, 526.] The ALJ dismissed Dr. Gilbert's assessment of Plaintiff's limitations because Dr. Gilbert relied solely on Plaintiff's subjective complaints in the absence of any significant findings that would yield such limitations on an MRI or physical examination. [*See* AR at 492-97; 502-20.] This conclusion is supported by the administrative record as Dr. Gilbert's findings, upon examination of Plaintiff, were largely unremarkable.

Further, the determination of disability and a claimant's residual functional capacity are not medical opinions, and the resolution of the issues presented by these inquiries are reserved for the Commissioner. 20 C.F.R. § 505.1527(e). Statements about what a claimant can still do are relevant evidence, but they are not determinative, as the ALJ has the responsibility for assessing a claimant's residual functional capacity. 20 C.F.R. §§ 404.1513(b), 404.1527, 404.1545, 404.1546(c). Dr. Gilbert's clinical findings were unremarkable and, coupled with his conservative treatment of Plaintiff, the ALJ reasonably concluded that Dr. Gilbert's assessment of Plaintiff's limitations was based on her subjective complaints.[4] Such subjective complaints are not

---

[4] In fact, all examinations reported in the record revealed normal strength, sensation, reflexes, and range of motion, although the court does note Plaintiff's diagnosis with degenerative disc

10

an acceptable basis for an opinion, 20 C.F.R. § 404.1527(d); *Walters*, 127 F.3d at 529-32; *Cutlip*, 25 F.3d at 287; *Bogle*, 998 F.2d at 347-48, and the ALJ properly rejected Dr. Gilbert's opinion.

**B.   Combined Effect of all Impairments**

Plaintiff also takes the position that the ALJ failed to consider the combined effect of all of the exertional and non-exertional impairments suffered by Plaintiff in determining her residual functional capacity to work.  Plaintiff has not identified to which impairments she refers, but, reading her brief carefully, it appears that Plaintiff would have the Court believe that the ALJ failed to consider any limitations caused by her mental condition, identified by the ALJ as "anxiety-related disorder" and "somatoform pain disorder."[5]  [AR at 12.]

Having ascertained the nature of her challenge to the ALJ's decision, the Court is still at a loss as to the theory of Plaintiff's challenge because she makes no argument nor does she specify how she believes that the ALJ erred.  Instead she offers a conclusory statement that "the medical records show that Plaintiff cannot work at all," that the medical records "show the severe problems that plaintiff suffers," and that Plaintiff "could not

---

disease based on x-ray and MRI scans.

[5]Plaintiff does not object to the ALJ's identification of her impairments in this way.

11

possibly maintain a job." [Record No. 6 at 5.] She offers no citation to the record nor to any portion of the ALJ's decision which she believes to be in error.[6]

Where a Plaintiff does not develop an argument or identify specific aspects of the ALJ's decision that allegedly lack support in the record, the Sixth Circuit has:

> . . . decline[d] to formulate arguments on [claimant's] behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (I) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence. Rather, we limit our consideration to the particular points that [claimant] appears to raise in her brief on appeal.

*Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). This Court will do the same.

This Court is charged with determining whether there is substantial evidence in the administrative record to support the decision of the Commissioner that Plaintiff is not entitled to benefits for which her application was made and whether the Commissioner applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Foster*, 279 F.3d at 353. As Plaintiff has not identified

---

[6]In fact, the ALJ recognized the severity of her impairments [AR at 12], including those related to her mental condition, and recited exertional and nonexertional limitations in his assessment of Plaintiff's residual functional capacity and limitations [AR at 13] which would appear to arise from these impairments. To the extent that Plaintiff argues that the ALJ entirely failed to consider these impairments, there is no merit to her argument.

why she believes that the Commissioner's decision is not supported by substantial evidence or failed to apply the correct legal standard with regard to her claim on these grounds, the Court will consider her argument no further.

**V. Conclusion**

For all of the reasons stated above, the decision rendered by the ALJ and adopted by the Commissioner shall affirmed.

Accordingly, **IT IS ORDERED:**

(1) That the Commissioner's motion for summary judgment [Record No. 7] shall be, and the same hereby is, **GRANTED.**

(2) That the plaintiff's motion for summary judgment [Record No. 6] shall be, and the same hereby is, **DENIED.**

This the 12th day of May, 2009.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

13